## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL MORRISON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-01990-SGC |
| | ) | |
| G&S GLASS & SUPPLY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Pending before the court is the plaintiffs' motion for conditional certification and to facilitate notice pursuant to §216(b) of the Fair Labor Standards Act.  (Doc. 25).  The sole defendant, G&S Glass & Supply, Inc. ("G&S"), has responded in opposition to the motion, and the plaintiffs have replied. (Docs. 27, 28). For the reasons discussed below, the motion is due to be **GRANTED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Michael Morrison ("Morrison") brought this action on December 10, 2019, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), asserting a single count against G&S alleging it did not properly compensate him for travel time.  (Doc. 1).  This court entered a scheduling order setting April 30, 2020,

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 9).

as the deadline for Morrison to amend his complaint.  (Doc. 13 at 1).  Morrison filed a motion for leave to amend his complaint on April 30, 2020, which was opposed by G&S.  (Docs. 15, 17).  The court granted the motion, and the complaint was amended to include Brad Morrison as an additional plaintiff and add collective action claims on behalf of the named plaintiffs and "other similarly situated parties." (Doc. 20).[2] More specifically, the amended complaint divides Morrison's original count into two distinct causes of action -- one for unpaid overtime related to overnight travel and one for unpaid overtime related to same-day travel during which Morrison was acting in his capacity as a G&S employee.  (Doc. 15).  The amended complaint also added Brad Morrison as a plaintiff with respect to the overnight travel claim and restyled the overnight travel claim as a collective action claim brought by Michael and Brad Morrison (the "Morrisons") on behalf of themselves and other persons similarly situated.  (*Id.*).  G&S answered the plaintiffs' amended complaint on July 23, 2020.  (Doc. 23).

The plaintiffs have now filed a motion for conditional class certification and brief in support.  (Docs. 24, 25).  Attached to the motion is a "consent to join suit as party plaintiff" executed by G&S employee Aaron Ward.  (Doc. 25-1).  The pending

---

[2] G&S did not oppose the joinder of Brad Morrison but did oppose the addition of FLSA collective class claims to the lawsuit. (Doc. 17).   In the May 24, 2020 order granting the plaintiff's motion for leave to file the amended complaint, the court applied the liberal standard for leave laid out in Rule 15(a) of the FEDERAL RULES OF CIVIL PROCEDURE, and declined to address G&S's argument on whether Morrison satisfied the evidentiary burden for collective action certification. (Doc. 19 at 3-4).

motion seeks: (1) conditional certification of a class of employees of G&S including the Morrisons and opt-in employee/plaintiff Aaron Ward ("Ward") and (2) authorization that notice be sent to the class of employees subject to this conditional certification. The motion specifies the conditional class it seeks to certify is "all hourly Field Glaziers and all hourly employees who were subjected to the defendant's Travel/Ride Time policy employed with the defendants during the last three years." (Doc. 24 at 3).

Declarations by Brad and Michael Morrison, as well as opt-in plaintiff Ward, were attached to the motion. (Docs. 25-2; 25-3; 25-4). The Morrisons and Ward were all hourly employees for G&S and were employed by G&S within the three years preceding filing this lawsuit. (Docs. 25-2 at ¶2; 25-3 at ¶2; 25-4 at ¶2). Morrison was employed at G&S as an hourly field supervisor/lead man/field glazier for approximately 9 years, ending in March 2019, and Brad Morrison and Ward were employed as field glaziers for G&S. (Docs. 25-3 at ¶2; 25-4 at ¶2; 25-2 at ¶2). The duration of Ward's and Brad Morrison's employment is not offered in the plaintiffs' briefing or attachments. (Doc. 25-1 at ¶2). However, the affidavit of G&S Vice President Ryan Metcalf provides Brad Morrison was employed by G&S from 2016 to 2018 and Ward was employed by G&S from January to August of 2018. (Doc. 27-1 at ¶¶ 5-6).

G&S has a written policy titled "Company Paid Riding Time."[3]  (Doc. 25-5). The policy states:

> When Company Management has agreed with an employee prior to starting work at a job site—if the employee drives directly to the job site from home- the employee may be paid riding time.
>
> The riding time hourly rate will be the employee's normal hourly rate minus the hourly rate for Company paid benefits. These rates will differ for each employee since it based (sic) on the employee's hourly rate of pay. (Doc 25-5).

While employed by G&S, Morrison parked his motor home at Lakeside Landing in Cropwell, Alabama, and considered Cropwell to be his home address.  (Doc. 28-1 at ¶¶ 3-6).  Morrison's declaration provides his son, Brad Morrison, lived in an apartment in Leeds, Alabama, while employed by G&S.  (Doc. 28-1 at ¶ 4).  While Ward's home location is not provided, he did not consider the G&S work locations to be his home community. (Doc. 28 at 6).

The Morrisons and Ward were required to travel overnight to job sites to perform work for G&S.  (Docs. 25 at ¶ 3; 25-2 at ¶ 3; 25-3 at ¶ 3; 25-4 at ¶ 3).  When assigned to a work site that required travel for overnight stay, the Morrisons and Ward were paid their rate of pay for riding time as set out in the company policy, for some, but not all of the hours spent traveling from their homes to the job site, from

---

[3] The "Company Paid Riding Time Policy" is referred to as the Travel/Ride Time policy in the plaintiffs' motion and briefing and, accordingly, is referred to as such in this memorandum opinion and order.

the job site to their homes, or sometimes from one overnight job site to another overnight job site. (Docs. 25-2 at ¶¶ 5-7; 25-3 at ¶¶ 5-7; 25-4 at ¶¶ 5-7).  G&S did not count travel time hours as hours worked when calculating overtime due. *Id.* When the Morrisons and Ward worked over 40 hours in a week, including travel or riding time, they were not paid the time-and-a-half overtime rate for any of their riding and travel time and instead were paid the Travel/Ride Time policy rate. *Id.*[4] The plaintiffs claim that G&S's practices under the Travel/Ride Time policy resulted in overtime wages not being properly paid to them by the defendant. (Doc. 24 at 2).

Further, Morrison's were told they did not need to submit all travel hours to payroll, and if they did include all travel hours, G&S would cut the hours.  (Docs. 25-3 at ¶ 8; 25-4 at ¶ 8).  Morrison was told by the owner of the company if he ever sued G&S for time travel, he would be fired. (Doc. 25-2 at ¶ 10).[5]  Because these practices are a result of the Travel/Ride Time policy, the plaintiffs assert that G&S's violations of the FLSA are willful.[6]  *Id.*  Ward and Brad Morrison are "aware that

---

[4] The plaintiffs provide the following calculation to illustrate payment under the Travel/Ride Time policy: "[f]or example, if Plaintiff Michael Morrison worked 50 hours in a week and 6 of those hours were riding/travel hours, he would have been paid 40 hours at his regular rate, 4 hours at one and a half times his regular rate for overtime hours, and 6 hours at the riding/travel rate."  In the alternative, "[i]f the company had counted all of his travel and riding hours worked, then he would have been paid 40 hours a week at his regular rate of pay and 10 hours at the time and a half overtime rate."  (Docs. 25 at 5, 25-3 at ¶ 7).

[5] The name of the owner is not specified in Morrison's declaration.  (*See* Doc. 25-2).

[6] The statute of limitations for a minimum-wage or overtime violation under the FLSA is generally two years but extends to three years if it is determined an employer willfully violated the statute. 29 U.S.C. § 255.

other employees worked under this policy and were paid the same way [they] were"

(Docs. 25-2 at ¶ 8; 25-4 at ¶ 9), and the Morrisons are aware that other employees

want to join the instant lawsuit but fear retaliation from G&S.  (Docs. 25-3 at ¶ 10;

25-4 at ¶ 10).

    The plaintiffs attached a copy of the proposed "Notice of Pending Fair Labor

Standard Act Lawsuit" as an exhibit to their motion, which defines the proposed

conditional class to be notified as follows:

> "Hourly employees who traveled away from their home communities
> and were paid pursuant to the Travel/Ride Time policy and currently
> employed or previously employed with G&S Glass, Inc. at any time
> from December 10, 2019 [3 years from the Complaint] to the present."
> (Doc. 25-6 at 1).

    In opposition, G&S argues the plaintiffs have not met their burden for

conditional certification of an FLSA collective class because the plaintiffs have

failed to show that similarly situated employees exist who suffered FLSA violations

due to the Travel/Ride Time policy.  (Doc. 27).  Specifically, G&S contends the

allegations contained in the plaintiffs' declarations are not probative of the similarly

situated requirement and the Morrisons and Ward were not similarly situated due to

variations in their living and travel accommodations. (Doc. 27 at 5).  No argument

is made by G&S regarding the language of the proposed notice.

    In support of its opposition, G&S cites to the declaration of Ryan Metcalf,

which provides Morrison was never a supervisor or lead person with G&S and was

only ever employed as a field glazier. (Doc. 25-1 at ¶ 3). Metcalf further attests the Morrisons did not have a permanent address during their employment by G&S and lived in a motor home paid for by G&S. *Id.* at ¶¶ 4-5. The Morrisons would drive the motor home to wherever they were working at a given time. *Id.* at ¶¶ 4-5. Similarly, Metcalf states Ward had a brother who was also employed by G&S and both Ward and his brother did not have a permanent address but lived in hotels paid for by G&S at the specific job sites where they worked. *Id.* at ¶¶ 6-7. Finally, Metcalf states that other than the Morrisons, Ward, and Ward's brother, G&S did not have, and has not had, any employees who worked at job sites where overnight accommodations were necessary from December 2016 to the present. *Id.* at ¶ 8.

## II.    DISCUSSION

"In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174, (1989). Therefore, the court makes clear this memorandum does not offer any opinion, ruling, or commentary on the merits of this case and only relates to (1) whether conditional certification is appropriate under the relevant law and (2) whether notification of employees similarly situated should be authorized. As such, the court will not

address here arguments made in briefing by both parties related to whether violations of the FLSA occurred.

Section 216(b) of the FLSA authorizes an employee to bring a "representative" or "collective action" against his or her covered employer for wage violations on behalf of themselves and other employees "similarly situated." 29 U.S.C. §216(b).  A two-step approach applies in determining whether plaintiff(s) and additional persons are similarly situated and therefore eligible for collective treatment under §216(b).

The first step is referred to as conditional certification as the decision may be reexamined once the case is ready for trial.  *Hipp v. Liberty Nat'l Life Ins. Co*., 252 F.3d 1218, 1218 (11th Cir. 2001); *Morgan v. Fam. Dollar Stores, Inc*., 551 F.3d 1233, 1260–61 (11th Cir. 2008).  At the first stage, the district court determines if the plaintiffs are "similarly situated" based primarily on the "named plaintiffs' 'detailed allegations,' which establish essentially 'the same job requirements and almost identical treatment' among the group of employees defined in the collective-action notice." *Anderson v. Cagle's, Inc*., 488 F.3d 945, 951–52 (11th Cir. 2007). A district court can certify the collective action conditionally due to the possibility of the court later decertifying the collective action upon a motion filed by the employer after discovery is substantially completed and the matter is ready for trial. *Id*.

Analysis under the second step is triggered by an employer's motion for decertification. *Morgan*, 551 F.3d at 1261; *Anderson*, 488 F.3d at 953.  The second step is less lenient than the first, and the plaintiffs bear a heavier burden.  *Anderson*, 488 F.3d at 953.  The court should consider several relevant factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Id.* at 953; *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir.2001).  While the FLSA does not require potential class members to hold identical positions, to maintain a collective action under § 216(b) the similarities must extend "beyond the mere facts of job duties and pay provisions."  *Anderson*, 488 F.3d at 953 (quoting *White v. Osmose, Inc.,* 204 F. Supp. 2d 1309, 1314 (M.D.Ala.2002)); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).  "Otherwise, 'it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse.'"  *Id.* (citations omitted).

The instant motion seeks conditional certification under the first step described above.[7]  In *Dybach v. State of Fla. Dep't of Corrections,* 942 F.2d 1562

---

[7] G&S contends this case does not fit into either step because the matter has been pending since December 10, 2019, and the parties have already exchanged written discovery and made initial Rule 26 disclosures.  (Doc. 27 at 4).  This argument is without merit as the plaintiffs have only requested conditional certification and discovery is ongoing. G&S will have an opportunity to file a motion for decertification at the appropriate stage, which is when discovery has been completed and the case is ready for trial.  *See Hipp* 252 F.3d at 1218.

(11th Cir.1991), the Eleventh Circuit set forth a two-part test for determining whether a collective action under the FLSA should be conditionally certified. The two inquiries for the court to make are: (i) whether there are other employees of the employer who wish to "opt-in;" and (ii) whether these employees are "similarly situated" with respect to both their job duties and their pay. *Dybach,* 942 F.2d at 1567-68; *see also Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1247-49 (11th Cir.2003) (detailing differences between collective actions under FLSA and class actions under Rule 23). Each of these questions are examined below.

### A.    Opt-In Interest Requirement

Unlike class actions governed by the *Federal Rules of Civil Procedure* in which potential class members may choose to opt out of the action, FLSA collective actions require potential class members to notify the court of their desire to opt-in to the action. 29 U.S.C. § 216(b); *see also Anderson* 488 F.3d at 945. The consent to join suit executed by Ward demonstrates the intent of an additional employee of G&S to opt-in to the instant litigation. (Doc. 25-1). Further, Michael and Brad Morrison and Ward all indicate they are aware of additional employees who worked under the policy and were paid the same way. (Docs. 25-2 at ¶ 8; 25-4 at ¶ 9). Additionally, the Morrisons are aware of other employees want to join the instant lawsuit but fear retaliation from G&S. (Docs. 25-3 at ¶ 10; 25-4 at ¶ 10).

G&S argues the declarations of the Morrisons and Ward are problematic in that they "generalize the facts of this case to create an appearance of similarity that does not actually exist." (Doc. 27 at 5).  According to G&S, "conclusory, and nearly identical, allegations contained in the declarations are not probative of the similarly situated requirement for FLSA collective class claims."  (Doc. 27 at 5).  G&S cites *Gibbs v. Mlk Express Servs., LLC*, 2019 WL 2635746, at *7 (M.D. Fla. June 27, 2019), in support of its argument.  (*Id.*).  However, in *Gibbs* no argument was made that no additional employees existed who desired to opt-in to the action.  2019 WL 2634736, at *4.  As such, in large part the court's analysis focused on the second judicial inquiry, which involves a determination of whether opt-in plaintiffs and other potentially eligible employees are substantially similar. *Id.*

Likewise, while G&S argues against similarity between the Morrisons and Ward, G&S does not provide an argument that no employees wishing to opt-in exist. On the contrary, G&S provides that Ward was employed by G&S with the same job title – field glazier – as the Morrisons and there was a fourth employee, Ward's brother, who held the same position and worked at job sites where overnight travel was required during the relevant time period. (Doc. 27-1 at ¶ 7).  Accordingly, at this preliminary step the court must accept there is at least one additional employee wishing to opt-in to this litigation, and the possibility exists other similarly situated employees may wish to do the same.

## B.     Similarly Situated Requirement

As the first inquiry is satisfied, this court must determine whether potential opt-in plaintiffs meet the requirements set forth in 29 U.S.C. §216(b).  Pursuant to §216(b), employees alleging a violation of the FLSA may bring an action on their own behalf and on the behalf of other similarly situated employees. The language of §216(b) provides in pertinent part:

> An action to recover the liability prescribed in the preceding sentences may be maintained against an employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*.

29. U.S.C. §216(b)

A plaintiff bears the burden of establishing that he and the group he wishes to represent are similarly situated. *See Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir.1996).  While the meaning of "similarly situated" is not defined by the FLSA, the Eleventh Circuit has expressed the view the "similarly situated" requirement is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance) ... [and] that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b) ...." *Grayson,* 79 F.3d at 1095; *see also Hipp,* 252 F.3d at 1219; *Stone v. First Union Corp.,* 203 F.R.D. 532, 542 (S.D. Fla. 2001).  Although the Eleventh Circuit has made clear that a plaintiff may establish others are "similarly situated" without pointing to a particular plan or policy, a plaintiff must

make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class beyond the mere facts of job duties and pay provisions. *Marsh v. Butler Co. Sch. System,* 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003); *White v. Osmose,* 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002). Essentially, a plaintiff must demonstrate a "reasonable basis" for his claim of class-wide discrimination. *Grayson*, 79 F.3d at 1097. This burden, "which is not heavy, [is met] by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (citation omitted).

While blanket, conclusory statements submitted in affidavits of plaintiffs seeking conditional class certification are not enough to establish substantial similarity, here, that is not the case. The Morrisons and Ward have submitted sufficiently detailed declarations representing Morrison was employed at G&S as an hourly field supervisor/lead man/field glazier for approximately 9 years, ending in March 2019, and Brad Morrison and Ward were employed as a field glaziers for G&S. (Docs. 25-3 at ¶ 2; 25-4 at ¶ 2; 25-2 at ¶ 2). All three state they traveled from their home communities to job sites that were too far for them to drive back and forth in a day. (Docs. 25-2 at ¶ 3; 25-3 at ¶ 3; 25-4 at ¶ 3). When assigned to those sites, they would travel to the site and spend the night near that location until it was time for them to travel home. *Id.* Notably, G&S had a specific Travel/Ride Time policy

in place which the plaintiffs and Ward point to as the applicable policy regarding their work-related travel and allege violations of the FLSA pursuant to the policy's provisions.  (*See* Doc. 25-5).

As previously noted, Ryan Metcalf disputes Michael Morrison's description of his employment and attests Morrison was never a foreman, field supervisor, or lead person with G&S, but instead was a field glazier for the duration of his employment.  (Doc. 27-1 at ¶ 3).  While plaintiffs and opt-in plaintiffs are not required to hold identical positions to maintain a collective action, Metcalf's affidavit supports that Michael Morrison, Brad Morrison, and Ward all held the same position at G&S.  *Id.* at ¶¶ 5-6.  Further, evidence provided shows the Morrisons and Ward are alleging violations of the FLSA due to underpayment of overtime wages as outlined in the Travel/Ride Time policy.  (Doc. 25 at 3-4).  Accordingly, the plaintiffs have met the burden of similarity at this stage.  Should evidence disputing similarity be found during discovery, the defendant may trigger the more stringent second step of analysis by filing a motion for decertification at the appropriate time. *See Morgan*, 551 F.3d at 1261; *Anderson*, 488 F.3d at 953.

### C.    Notification

A court may conditionally certify a collective class action under the FLSA and facilitate notice to the class members if it finds there are other employees "similarly situated" to the plaintiff with respect to job and pay who may desire to

"opt in." *Hoffmann-La Roche Inc.*, 493 U.S at 174.  Describing the practical benefits

of FLSA collective actions, the Supreme Court has stated:

> A collective action allows . . . plaintiffs the advantage of lower
> individual costs to vindicate rights by the pooling of resources. The
> judicial system benefits by efficient resolution of one proceeding of
> common issues of law and fact arising from the same alleged
> discriminatory activity. These benefits, however, depend on employees
> receiving accurate and timely notice concerning the pendency of the
> collective action, so that they can make informed decisions about
> whether to participate. *Id.* at 170.

"By monitoring preparation and distribution of the notice, a court can ensure that it

is timely, accurate, and informative."  *Id.* at 171-72.

Attached to the motion for conditional class certification is a proposed three-

page notice form to be mailed to all putative class members, styled "Notice Pending

Fair Labor Standard Act Lawsuit."  G&S makes no opposition to the language of the

proposed notice. Furthermore, although Ryan Metcalf's affidavit represents that

other than the Morrisons, Ward, and Ward's brother, G&S did not and has not had

any employees who worked at job sites where overnight accommodations were

necessary from December 2016 to the present, because G&S acknowledges the

existence of at least one additional similarly situated plaintiff and the declarations of

the Morrisons and Ward indicate the existence of additional, unnamed hourly

Case 2:19-cv-01990-SGC   Document 29   Filed 09/30/21   Page 16 of 17


employees who were paid under the policy and may wish to opt-in, this court finds the proposed notice appropriate.[8] (Doc. 27-1 at ¶ 8),

As the plaintiffs have alleged a willful violation of the FLSA, the notice period of the conditional opt-in class is three years prior to the filing of the complaint. *See* 29 U.S.C. § 225(a); *see also Knight v. Columbus, GA.*, 19 F.3d 579, 581 (11th Cir. 1994), *cert. denied,* 513 U.S. 929 (1994) ("Actions under the FLSA are 'forever barred' unless 'commenced within two years after the cause of action accrued.' In the case of willful violations, the limitations period is extended to three years." (citations omitted). The plaintiffs will have the burden to show G&S committed a willful violation, thereby triggering the three-year limitations period. *See Rodriquez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008).

## III.   CONCLUSION

For the reasons stated above, the plaintiffs' motion for conditional class certification and notice (Doc. 25) is **GRANTED**. To facilitate the provision of notice, G&S is **ORDERED**, within thirty (30) days from the date of this order, to provide plaintiffs' counsel in a mutually agreeable format a list containing the names

---

[8] In addition to requesting the names and current or last known addresses of hourly employees who traveled away from their home communities and were paid pursuant to the Travel/Ride Time policy, in their supporting brief the plaintiffs also request the court require the defendant to post the approved notice letter on its website, in a company newsletter to employees on bulletin boards at each of its locations, and through a company email to the hourly employees currently working for G&S. (Doc. 25 at 15). This request is not included in the plaintiffs' motion and not addressed in the defendant's response or the plaintiffs' reply. Consequently, it is not addressed in this memorandum opinion.

and current or last known addresses of all hourly employees who traveled away from their home communities and were paid pursuant to the Travel/Ride Time policy and currently employed or previously employed by G&S at any time from December 10, 2019, to the present.

**DONE** this 30th day of September, 2021.

_Staci G. Cornelius_
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE